No. 23-746 – *Lawyer Disciplinary Board v. Scott A. Curnutte, a Member of the West Virginia State Bar*

**FILED**

**June 6, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

WOOTON, Chief Justice, concurring, in part, and dissenting, in part:

I concur in the majority's factual and legal conclusions that the respondent, Scott A. Curnutte ("Mr. Curnutte"), committed multiple violations of Rule 8.1(b) of the Rules of Professional Conduct ("the Rules") by failing to comply with lawful requests for information issued by the petitioner, Lawyer Disciplinary Board ("LDB"), and that he violated Rule 1.4(a)(3) & (4) by failing to communicate with his client, Terry L. McFarlan ("Mr. McFarlan"). Mr. Curnutte admits the Rule 8.1(b) violations, offering neither explanation nor excuse for his unfathomable actions in repeatedly ignoring letters which explicitly informed him that if he did not timely respond to requests for information, the allegations in the complaint would be deemed admitted and the matter would be referred to the Investigative Panel of the LDB. Although Mr. Curnutte denies the Rule 1.4(a)(3) & (4) violations, the LDB's evidence of failure to communicate with Mr. McFarlan was clear and convincing and Mr. Curnutte's testimony on this issue was halfhearted at best.

I dissent, however, from the majority's conclusion that the charges of failure to act with diligence and promptness in the McFarland matter, Rule 1.3; failure to expedite litigation in the McFarland and Lambert matters, Rule 3.2; and knowingly disobeying an obligation under the rules of a tribunal, Rule 3.4(c), and conduct prejudicial to the

1

administration of justice, Rule 8.4(a), in the Kramer matter, were established by clear and convincing evidence. Further, I believe that the imposition of a six-month suspension of Mr. Curnutte's license was unwarranted under the facts and circumstances of this case, although I acknowledge that reasonable minds could differ – and do – as to whether Mr. Curnutte sowed the wind here and should not be heard to complain that he is reaping the whirlwind.

With respect to the McFarlan case, it is indisputable that the case took years longer than anyone could have anticipated at the outset, and that Mr. McFarlan was justifiably angry and frustrated by the delay.[1] Nonetheless, Mr. Curnutte's explanation of the various factors which caused or contributed to the delay was undisputed, and although he might be faulted for not pushing harder to get the case resolved, I see no basis on which to conclude that his inability to finalize the matter rose to the level of an actionable violation of the Rules. In this regard, I disagree with the majority's conclusion that the complicating factors in this case did not affect Mr. Curnutte's ability to prepare corrected deeds; the evidence is that he prepared three sets of them, including one that was rejected by the Randolph County Assessor and two others that were rejected by opposing counsel as being (allegedly) inconsistent with the parties' settlement agreement. In short, I see no evidence

---

[1] It is clear from the record that Mr. McFarlan's anger and frustration increased in direct proportion to Mr. Curnutte's failure to keep him informed as to the progress (or non-progress) of the case.

2

that Mr. Curnutte neglected the McFarlan *case*, although there was ample evidence that he neglected the *client*.

With respect to the Lambert case, where there was no evidence whatsoever that any delay was attributable to fault on Mr. Curnutte's part, the majority resorts to making a credibility determination: "Any legitimate delays cannot account for the overall length of time the case remained unresolved, particularly in view of the damage to Mr. Curnutte's credibility resulting from the discrepancy between how Mr. Curnutte claimed he acted in representing his clients and how he in fact acted toward ODC." I find this statement to be quite astonishing. First, the majority implies that delay in resolving a case, in and of itself, is a sufficient ground for professional discipline even where there is no evidence that the delay is anything other than "legitimate." In that regard, all of the evidence at the HPS hearing was that Mr. Curnutte pushed and pushed this case but was thwarted at every turn, first by the Tucker County Commission which sat on Mr. Lambert's challenge to his late wife's will for two years and then refused to hear it; then by the circuit court which continued the case on multiple occasions and allowed it to drag on for years; then by the defendant who, having lost on every issue that was litigated in the circuit court proceedings, failed and refused to pay Mr. Lambert what was owed him; and finally by

defense counsel who, after judgment was entered against his client, "went radio silent" and refused to respond to Mr. Curnutte's calls and emails.[2]

Additionally, it is well established that this Court does not have the authority to make credibility determinations. *See, e.g.*, *State v. Guthrie*, 194 W. Va. 657, 669, 461 S.E.2d 163, 175 (1995) ("On review, we will not weigh evidence or determine credibility"); *In re D.S.*, __ W. Va. __, __, 914 S.E.2d 701, 707 (2025) (same). In this case, the majority has openly done just that, finding that Mr. Curnutte's failure to respond to LDB's lawful requests for information negatively affects the credibility of his testimony as to how he "claimed he acted in representing his clients" – a jump of logic that finds no support in our case law.

With respect to the Kramer case, I am frankly astounded at the majority's holding that Mr. Curnutte's failure to prepare a document within five days of a mediation, memorializing the parties' agreement to certain terms and conditions, constituted both knowing disobedience to the rule of a tribunal, Rule 3.4(c), and conduct prejudicial to the administration of justice, Rule 8.4(a). First, in so doing, the majority completely discounts Mr. Curnutte's explanation – thus, making yet another credibility determination – that there was no need to prepare a document memorializing the parties' agreement to joint decision

---

[2] We are told that the defendant has now been indicted on charges arising from her administration of the estate, which may account for her counsel's failure to respond.

making with respect to matters affecting their child within five days of the mediation because he was informed, during that five-day period, that one party had already reneged on her agreement. In support of its unwarranted credibility determination, the majority cites the only conflicting evidence: that a letter confirming that the party had reneged was not sent until a month later. In my view, no rational factfinder could deem that to be clear and convincing evidence[3] in the absence of a statement indicating exactly when the party had decided to renege.

Second, absent extraordinary circumstances and/or a showing of willfulness, intransigence, and/or gross incompetence on the part of a lawyer, I do not believe that his or her failure to do something within the time limits of a rule of procedure should constitute a violation of the Rules of Professional Conduct warranting discipline. Our circuit judges and family court judges have a variety of tools at their disposal for keeping cases on track, and I would leave it up to them to level sanctions against non-compliant lawyers where warranted.

In summary, in my view the LDB failed to present clear and convincing evidence that Mr. Curnutte violated Rule 1.3, Rule 3.2, Rule 3.4(c), or Rule 8.4(a) in the

---

[3] *See* Rule 3.7 of the Rules of Lawyer Disciplinary Procedure: "In order to recommend the imposition of discipline of any lawyer, the allegations of the formal charge must be provided by clear and convincing evidence."

McFarlan, Lambert, and Kramer cases, all of which were complex and time-consuming for reasons unrelated to any fault on the part of Mr. Curnutte. Nonetheless, because Mr. Curnutte violated Rule 1.4(a)(3) & (4) in the McFarlan case, and violated Rule 8.1(b) multiple times in all four of the cases filed against him, I concur with the majority's conclusion that an admonishment would be an insufficient sanction. I believe that a six-month suspension is unduly harsh, given the facts and circumstances of this case; as noted *supra*, Mr. Curnutte may have sowed the wind, by virtue of ignoring LDB's lawful requests for information, but I am not convinced that he should therefore reap the whirlwind. I would require Mr. Curnutte to serve a three-month suspension, with readmission conditioned on his having obtained six hours of continuing legal education ("CLE") credit in the area of ethics and law office management beyond the three hours required by the CLE Commission for the 2024-26 reporting period, and his retention of a consultant to review his office procedures in order to determine if and how he might better handle his extensive case load,[4] and respond to client inquiries, within a reasonable period of time.

For the foregoing reasons, I respectfully concur, in part, and dissent, in part.

---

[4] Mr. Curnutte estimated that at the time of the HPS hearing he had approximately 115 clients and was handling approximately 85 active cases – a significant case load for a sole practitioner.